UNITED STATES, Appellant

v.

DOYLE E. GLOVER, Private E–1, U. S. Army, Appellee

2 USCMA 164, 7 CMR 40

No. 829

Decided February 6, 1953

LT. COL. Thayer Chapman, U. S. Army, and 1ST LT. Eugene L. Grimm, U. S. Army, for Appellant.

LT. COL. George M. Thorpe, U. S. Army, and 1ST LT. Floyd V. Hull, JR., U. S. Army, for Appellee.

### Opinion of the Court

GEORGE W. LATIMER, Judge:

This case is before us on certificate from The Judge Advocate General, United States Army, requesting that we review the decision of the Army board of review which, because of having concluded the law officer erred in failing to give certain instructions, approved only so much of a finding of guilty of larceny as finds the accused guilty of the lesser included offense of misappropriation.

The original charge and specification alleged larceny of an automobile. Upon arraignment[1] accused pleaded not guilty to that charge but guilty to the lesser included offense of wrongful appropriation. He persisted in his plea after being informed fully by the law officer that it admitted every act or omission and every element of the lesser offense; that it subjected him to a finding of guilty without further proof; and that he could be sentenced by the court to the maximum punishment authorized for that offense.

---

[1] CM 351160

**164**

At the time of the offense, accused was stationed at Camp McCoy, Wisconsin, where he was a member of Service Battery, 330th Field Artillery Battalion. The Government established a prima facie case of larceny of the motor vehicle and the accused, to support his plea that he did not intend permanently to deprive the owner of the vehicle, testified as follows: That on November 13, 1951, he left the camp on pass and spent the following two or three days in surrounding cities, apparently consuming a considerable quantity of intoxicating liquor; that sometime during the night or early morning of November 15–16, 1951, he entered a black Chevrolet sedan automobile which was parked in an alley behind a hotel in Winona, Minnesota; that the keys were not in the ignition lock of the car, but he found them by searching through the glove compartment; that he drove the vehicle to LaCrosse, Wisconsin, where he parked it on a side street; that he ran short on funds and wired his father for $10.00; that he waited in LaCrosse until November 17, 1951, for a reply to his wire, but no answer was received; that later that day he met three soldiers from Camp McCoy and during the course of their conversation he offered to drive them back to camp for a stated price which they accepted; that he then returned to the car, exchanged the license plates for Illinois plates which he took from a nearby car, and drove back to camp; that after discharging his passengers he attempted to leave the camp with the automobile but was stopped by a patrol sergeant who noticed that the car had no post tags; that in response to questions asked by the sergeant, he stated that he had no driver's license, that the automobile was not his own, and that he had borrowed it from a person whose name he could not remember; and that at all times he intended to return the car to the true owner.

After the taking of evidence had been completed and after arguments by counsel, the law officer, in his charge, included instructions on the elements of the offense of larceny, and the duty of the court to return a verdict on the lowest degree of the offense charged concerning which there was no reasonable doubt. He did not, however, include in his instruction the necessary elements of the included offense of wrongful appropriation. Defense counsel made no objections to the instructions as given and did not request any amplifying or additional instructions. The court-martial found accused guilty of larceny as charged and sentenced him to be dishonorably discharged from the service, to forfeit all pay and allowances and to be confined at hard labor for two years. The convening authority approved, and the case was forwarded to the board of review for consideration.

The board of review held that the lesser included offense of misappropriation was placed in issue by the plea of not guilty to larceny and by the evidence, and that the failure of the law officer to instruct on it and to mention that it was a lesser included offense of the crime of larceny constituted error prejudicial to the accused. The board based its holding on the decisions of this Court in United States v. Clark (No. 190), 2 CMR 107, decided February 29, 1952, and United States v. Williams (No. 251), 2 CMR 137, decided March 14, 1952. Accordingly, it approved only so much of the finding as found the accused guilty of wrongful appropriation and the sentence was reduced to a dishonorable discharge, total forfeitures, and confinement at hard labor for one year and six months.

The question certified by The Judge Advocate General is substantially whether the law officer committed prejudicial error by failing to instruct on the elements of the offense of misappropriation.

Article 121, Uniform Code of Military Justice, 50 USC § 715, in defining larceny and misappropriation states:

"(a) Any person subject to this code who wrongfully takes, obtains, or withholds, by any means whatever, from the possession of the true owner or of any other person any money, personal property, or article of value of any kind—

(1) with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate the same to his own use or the use of any person other than the true owner, steals such property and is guilty of larceny; or

(2) with intent temporarily to deprive or defraud another person of the use and benefit of property or to appropriate the same to his own use or the use of any person other than the true owner is guilty of wrongful appropriation."

A cursory glance at the two subsections will disclose that the offenses are identical except with respect to intent. In larceny a person must intend permanently to deprive the owner of his property; while in misappropriation the intent must be temporarily to deprive. Because of the similarity of the offenses and because of the plea of guilty to misappropriation, the only issue for the court-martial to decide was whether the accused possessed the intent necessary to permit a conviction for larceny.

A reading of the opinion of the board of review persuades us that the members misconstrued the rule announced in our previous cases on instructions. The legal principles with which we are here involved differ from those considered by us in United States v. Clark, and United States v. Williams, supra. They more nearly approach our holding in United States v. Lucas (No. 7), 1 CMR 19, decided November 8, 1951. In the former cases there were pleas of not guilty and this placed in issue all elements of all offenses, that is, the major offense charged and all those necessarily included. In the latter case, a guilty plea was entered and there was no real issue left for determination on any offense. Furthermore, the posture of the evidence in the former cases was such as to permit the court to consider the possibility of choosing between a finding of guilty of the greater offense, guilty of the lesser, or not guilty. The rationale of those cases is that before the court-martial could find properly the degree of the offense, it must be informed as to what elements were necessary to make up any offense alleged, or included, that the evidence fairly tended to establish. And, in addition, that merely to furnish the court-martial with the elements of the greater offense left the court with only three alternatives, namely, to find the accused guilty of the greater offense, to speculate on the elements of the included offense or offenses, or to find the accused not guilty. The vice of that procedure is apparent. Assuming the evidence proves some crime which, because of a dispute in the evidence, may be found in one of several degrees, and the only instruction given deals with the greater offense, there is a fair probability that the court-martial may conclude it must limit its consideration to the highest degree of that crime. This creates a situation where the court-martial, believing some offense has been committed, and not wanting to free the accused, may be influenced to return a finding of guilty on the only defined offense when, had it been guided properly, a finding on a lesser one might have resulted. Furthermore, if the court concludes to reject the greater offense because of insufficiency of the evidence and decides to return a finding on a lesser offense, it is without a legally provided test by which to determine the appropriate degree. In that event, it must rely on a self-created measuring rod and the accused and appellate tribunals have no way of knowing the accuracy of the rod.

The tactics adopted by the accused in this case present an entirely different problem. By his plea of guilty to misappropriation, he foreclosed the probability of a court-martial finding that the evidence was insufficient to establish the elements of any offense. A verdict of not guilty could not be reasonably returned. Further, the court was not faced with finding the greater offense or freeing the accused. It had been furnished with a predicate to use as a basis for returning a finding of guilty of the included offense. Moreover, the accused did away with the necessity of the court-martial having to fit the evidence to each element of the

lesser crime. It was informed by his plea that there was no factual issue concerning any of the elements of that offense, as a plea of guilty admits every incriminating fact alleged. In this instance the proceedings had been narrowed so that the court-martial need only choose one of two alternatives. It could have returned a finding of guilty of the greater offense, if by measuring the evidence against the judicial formula given by the law officer, it concluded the greater offense had been committed, or it could have reduced the offense to the lesser degree admitted by the plea.

Assuming for the moment that the greater offense had not been alleged, our holding in United States v. Lucas, supra, forecloses any contention that the accused was prejudiced by a failure to instruct on the offense to which he pleaded guilty. In that case we said:

". . . Tested by this rule we are unable to ascertain how the accused was prejudiced. At the time the plea was entered he was informed that the plea of guilty was an admission of the act as charged and every element of the offense alleged. He was told that he had the right to plead not guilty and by so doing would place the burden of proof of guilt upon the Government. He was further informed that his plea subjected him to a finding of guilty without further proof of the offense, and that the plea would not be accepted unless he understood its effect and meaning. In spite of this full and fair explanation, the accused persisted in his plea. If, as held in the previously cited authorities, a plea of guilty admits all of the incriminating facts alleged and the statutory elements of the offense charged, it is difficult to see any merit in the contention that the failure to instruct had any effect upon the court's decision. An accused is not presumed innocent after he has pleaded guilty. There could be no reasonable doubt remaining as to his guilt. . . ."

If we, therefore, follow the rule of that case and hold there is no prejudice for failure to instruct on an offense to which an accused has pleaded guilty, and consider now the fact that the greater offense was alleged and it alone was placed in issue, we are faced with a determination of whether a different rule should be applied because the plea was limited to an included offense. We find little, if any, difference in the two situations. No reasonable doubt was raised that the accused was not guilty of misappropriation and it would not have assisted the court-martial for the law officer to enumerate the elements of that offense. It needed no information beyond the plea of guilty, to return a finding of guilty of that crime. The accused willingly elected to narrow the limits of the trial to one factual dispute concerning only one element of the greater offense so the court-martial needed only to be told that in order to return a finding of guilty of the alleged offense, it must find that one element to be established beyond a reasonable doubt. The law officer may not have pointed up the precise difference between the two offenses in the most emphatic manner, but he did require the court-martial to find specifically an intent permanently to deprive the owner of his property. The fact that he gave all the elements of the greater offense could not prejudice the accused as that added no burden on him, as all but the intent were admitted.

It is contended, however, that when the accused does not admit the greater offense he is prejudiced because the court-martial was not fully advised as to the difference between the two offenses for comparative purposes. We fail to comprehend why any comparison other than the one furnished by the instruction should be required, or how it could be prejudicial to fail to furnish the court with guideposts so it could compare the elements of the admitted offense with the elements of the denied offense. Any comparison which might be necessary was furnished by the law officer when he announced the elements of the only offense which was in dispute. The court was only required to measure the testimony against the elements of that offense. The accused had conceded it measured up to the other and he and his counsel

**167**

were in a favored position to know its sufficiency for that purpose. With the lesser offense admitted, the important comparison is between the evidence and the formulae fitting the greater crime, not between the various gradations of the crime. If the evidence is sufficient to sustain a finding of larceny, it must of necessity be more than is demanded to meet the requirement of any included offense. In this instance it was only necessary for the court to determine whether the evidence was sufficient to show an intent permanently to deprive the owner of his property. If it found the accused intended to do so, there is implicit in that finding a negation of his asserted intent.

Even though this may be repetitious, for the purpose of stating clearly the minimum requirements of a law officer in cases similar to this, he must, at least, instruct the court on (1) the necessary elements of all offenses placed in issue by the plea, and (2) the course which should be followed by the court in arriving at a verdict on the appropriate offense, including its right to return a verdict on the plea of guilty if no greater offense is proven beyond a reasonable doubt. The law officer in this case met those minimum standards. He defined the offense of larceny as follows:

"The court is advised that the elements of the offense are as follows: That the accused wrongfully took, obtained, or withheld from the possession of the true owner or of any other person the property described in the specification; That such property belonged to a certain person named or described; That such property was of the value alleged, or of some value; and The facts and circumstances of the case, *showing that the taking, obtaining or withholding by the accused was with intent permanently to deprive* or defraud another person of the use and benefit of property or to appropriate the same to his own use or the use of any person other than the true owner." [Emphasis supplied]

It is conceded that the first requirement was met in that the above instruc-

tion properly defines the offense of larceny which was the only offense in issue. Since there was only one lesser included offense and this was admitted by plea, and, since the law officer informed the court that if it had reasonable doubt that the greater offense was committed, it should not convict but should only return a finding on that degree of the offense, concerning which there was no reasonable doubt, the second requirement was complied with substantially.

We are satisfied that the principles we have stated underlie the procedure adopted in this case and that there was no confusion at the trial level. The record shows that the crime was alleged in the following language:

"In that Private Doyle E. Glover, United States Army, . . . did, at Winona, Minnesota, on or about 16 November 1951, steal a black 1951 Chevrolet Tudor Sedan, of a value of more than fifty dollars ($50.00), the property of H. P. Arntson."

In connection with the plea of guilty, defense counsel stated the plea in the following words: "Guilty, except the word 'steal', substituting therefor, respectively, the words 'wrongfully appropriate'. To the excepted word, not guilty; to the substituted words, guilty." The law officer then fully explained the effect of the plea in the following language:

"Private Glover, by appropriate exceptions and substitutions, you have pleaded guilty to the lesser included offense of wrongful appropriation. By so doing, you have admitted every act or omission and every element of that included offense. *Your plea subjects you to a finding of guilty without further proof of that offense, in which event you may be sentenced by the court to the maximum punishment authorized for it.* You are legally entitled to plead not guilty and place the burden upon the prosecution of proving your guilt of that offense. Your plea will not be accepted unless you understand its meaning and effect. Do you understand?" [Emphasis supplied]

168

Prior to the taking of testimony, trial counsel quoted from the discussion concerning larceny found in the Manual for Courts-Martial, United States, 1951. After completing his reading, he stated:

"The accused has admitted by his plea of guilty to wrongful appropriation every element of the offense of larceny except the intent to permanently deprive the owner of his property. The burden, therefore, upon the prosecution is to show, beyond reasonable doubt, that the accused took this automobile with an intent to deprive the owner of it permanently, as distinguished from his admission contained in .his plea, that he took it with an intent to deprive the owner of it only temporarily. Larceny requires the intent to deprive permanently; wrongful appropriation, to which the accused has pleaded guilty, requires, and he admits having, the intent to deprive the owner only temporarily."

This was a correct statement of the law, accepted as such by everyone connected with the trial, and adopted by defense counsel. Final arguments of counsel for the Government and the accused bear out this assertion as they concede the only question for consideration was intent. Trial counsel argued the evidence established the necessary intent for larceny while defense counsel insisted it would only support a finding of misappropriation. Rather than being convinced that confusion abounded in the trial of this case, we are satisfied that everyone understood clearly the sole issue involved. While it might be helpful to the court-martial for a law officer to spell out clearly the difference between the two offenses and to be more specific in his instructions about the procedure to be followed by the court when considering a plea of guilty to an included offense, in this instance, we cannot say there was error which prejudiced the accused.

The question certified by The Judge. Advocate General of the Army is answered in the negative. The record is returned to him for reference to a board of review for action not inconsistent with this opinion.

Chief Judge QUINN concurs in result.

BROSMAN, Judge (dissenting):

I dissent. To my mind, the problem raised in this case is quite unlike those found in either United States v. Lucas (No. 7), 1 CMR 19, decided November 8, 1951, or United States v. Clark (No. 190), 2 CMR 107, decided February 29, 1952. In Clark, the accused was found guilty of a lesser included offense as to which no plea of guilty had been entered and no charge had been given. Here the accused pleaded guilty to the lesser offense, but was convicted of the greater one alleged in the specification and on which the court had been instructed. The accused in Lucas was convicted, without instruction thereon, of an offense to which he had pleaded guilty, whereas in the case at bar there was no such plea as to the offense found by the court to have been committed by the accused.

This Court has held repeatedly that the law officer must instruct the members of the court-martial on the elements of all lesser included offenses fairly raised by the evidence as alternatives to that charged. United States v. Clark, supra; United States v. Williams (No. 251), 2 CMR 137, decided March 14, 1952; United States v. Roman (No. 191), 2 CMR 150, decided March 19, 1952; United States v. Drew (No. 422), 4 CMR 63, decided July 23, 1952; United States v. Banks (No. 382), 4 CMR 71, decided July 24, 1952; United States v. Moreash (No. 715), 5 CMR 44, decided August 27, 1952.

A careful reading of the majority opinion has failed to communicate to me with definiteness whether my brethren intended to hold that, in view of the posture of the pleadings in this case, the law officer did not err in omitting to instruct on the offense of wrongful appropriation, or that their conclusion was that, although error was present, it did not materially prejudice the substantial rights of the accused. However, I am inclined to believe with reasonable assurance that they concede

error, but deny prejudice. For myself, I am sure that the law officer's failure to charge as to the lesser included offense constituted error. On the basis of the facts as reported in the opinion of the Court, together with those omitted therefrom, I entertain no doubt that the possibility of guilt of wrongful appropriation was fairly raised as a reasonable alternative to the larceny charged, and that the court-martial should have been instructed thereon. This was not done. It now becomes necessary to inquire whether this imperfection prejudiced the accused—that is whether there was a fair risk of confusion on the part of the court's members as to courses open to them under the law and the facts. I think prejudice was indeed present, for I cannot believe that there was not more than a reasonable likelihood of confusion, uncertainty and downright want of information in the court.

I am unable to derive satisfaction from the fact that the accused, Glover. had pleaded guilty to wrongful appropriation—for nowhere in the record can I perceive that it was brought home to the members of the court that they might properly return a finding of guilty of the lesser offense. Certainly, the instructional failure was not cured through the action of the law officer in giving the standard instruction to the effect that "if there is a reasonable doubt as to the degree of guilt, the finding must be in a lower degree as to which there is no doubt." This Court expressly stated in United States v. Clark, supra:

"One of the standard instructions required to be given to the members of the court-martial is to the effect that if there is reasonable doubt as to the degree of guilt, the finding must be in the lesser degree as to which there is no doubt. Without some guidance or help from the law officer as to the elements of the lesser included offenses, it is difficult to determine how the members of the court-martial could properly apply that instruction. If the differences in the crimes are not given to the court, and only the most serious offense is defined, there are no guideposts, and no limits, to help the court delineate the included offense."

It is even possible that the court in this case concluded, from the law officer's refusal to accept accused's plea of guilty to wrongful appropriation, that they could not properly return a finding of guilty of that offense. I am not permitted to guess how much its members know of court-martial proceedings. Therefore the presence of the plea might well have operated to produce a result quite the reverse of that ascribed to it by the majority. Conceding that the only issue at the trial *as between prosecution and defense* was the intent of accused, this is much too little. The record must reflect that *the members of the court* understood that this was the only issue. United States v. Johnson (No. 498), 4 CMR 128, decided August 7, 1952. Perhaps the members of the court of their general knowledge, or qua officers of the military establishment, understood fully that wrongful appropriation was the only lesser offense included within the larceny charged. However, we have no sort of assurance that that was so. This suppositious knowledge on their part may not be resorted to for the purpose of curing the overt defect in the instructions. United States v. Soukup (No. 533), 7 CMR 17, decided January 23, 1953.

The majority makes much of the fact. that, prior to the taking of testimony, trial counsel read from the Manual on the subject of larceny, and added thereto certain comments of his own which operated to isolate "intent" as the sole issue in the case under the pleadings. It is even stated that "this was a correct statement of the law and accepted as such by everyone connected with the trial." I can only inquire into the source of this assurance of acceptance. Certainly I am wholly without it. The members of the court-martial, I am sure, are enjoined by the Uniform Code of Military Justice and the Manual for Courts-Martial, United States, 1951, to take their law from no court agency save the forum's "judge." It is the specific duty of the law officer

170

to furnish them with this technical information—and as much of it as is required in the case under the facts and the law, including the decisions of this Court. This duty he cannot be permitted to evade through reliance on conduct of other personnel of the tribunal—particularly that of a functionary whose necessary and proper partisanship is recognized by all, and who spoke during a stage of the trial considerably removed in time from the court-martial's deliberations on findings.

The net of all this is that we cannot possibly say with any sort of certainty that the members of the court-martial knew that which the law officer and my colleagues know so well about the law applicable to the case at bar. The majority opinion contains an elaborate and technically convincing logico-legal argument by force of which, it is asserted, the court could not conceivably have failed to recognize intent as the case's single issue. This portion of the opinion is impressive and tightly reasoned. This is its principal defect: *it is much too tightly reasoned.* If I could suppose that the members of the court-martial were as accomplished in military law, and as accustomed to legal modes of thought as my two learned colleagues, I would be without fear. However, I cannot suppose this, and I am thus afraid. In short, I believe that approval of the instructions questioned here is contrary to the decisions heretofore rendered by this Court. I believe too that the action of the Army board of review in affirming only so much of Glover's sentence as finds him guilty of wrongful appropriation was eminently proper.